IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

**FILED**
**November 12, 2025**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 24-306

In Re J.F-1., C.F., and L.H.

Appeal from the Circuit Court of Nicholas County
The Honorable Stephen O. Callaghan, Judge
Case Nos. CC-34-2023-JA-135, CC-34-2023-JA-136, CC-34-2023-JA-137

VACATED AND REMANDED WITH DIRECTIONS

Submitted: October 22, 2025
Filed: November 12, 2025

Kimberly M. Kosloski, Esq.
Klie Law Offices
Buckhannon, West Virginia
Counsel for Petitioner

John B. McCuskey, Esq.
Attorney General
Mattie F. Shuler, Esq.
Assistant Solicitor General
Office of the Attorney General
Charleston, West Virginia
Counsel for Respondent

Daniel K. Armstrong, Esq.
Gassaway, West Virginia
Guardian ad Litem for J.F-1., C.F.,
and L.H.

CHIEF JUSTICE WOOTON delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).


2.      "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

i

3.     When a respondent parent asserts that he or she is a "battered parent" as that term is defined in West Virginia Code section 49-1-201 (2025) prior to the conclusion of an adjudicatory hearing, the circuit court must allow for the presentation of evidence on that issue during the adjudicatory hearing. At the conclusion of the adjudicatory hearing, West Virginia Code section 49-4-601(i) (2025) requires the circuit court to make findings of fact and conclusions of law as to whether the respondent parent meets the statutory definition of a "battered parent."

4.     If the circuit court determines that a respondent parent is a "battered parent" at adjudication, then the court must consider that determination during the dispositional phase in accordance with West Virginia Code section 49-4-604 (c) (2020).

5.     "In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W.Va. Code [§ 49-4-604 (2020)], it must hold a hearing under W. Va. Code [§ 49-4-601 (2025)], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case." Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983).

WOOTON, Chief Justice:

In this abuse and neglect appeal, petitioner mother J.K.[1] appeals the Circuit

Court of Nicholas County's March 6, 2024, order adjudicating her as an abusive and

neglectful parent to her three children, J.F.-1, C.F., and L.H., and the court's May 7, 2024,

dispositional order terminating her parental rights to the children. The petitioner argues

that the circuit court failed to make findings as to whether the petitioner was a battered

parent, an issue which was raised at adjudication. After our review of the parties' briefs

and oral arguments, the appendix record, and the pertinent legal authority, we find that the

circuit court erred in failing to properly assess the petitioner's battered parent claim. We

therefore vacate the court's adjudicatory and dispositional orders and remand this matter

to the circuit court for further proceedings consistent with this opinion.

## I.      FACTS AND PROCEDURAL HISTORY

The petitioner was a named party in a September 17, 2021, abuse and neglect

petition with J.F.-2 ("the father"), who is the biological father of J.F.-1 and C.F. The petition

alleged that both parents engaged in domestic violence in the presence of the children and

---

[1] Because this case involves minors and sensitive matters, we follow our longstanding practice of using initials to refer to the children and the pertinent parties. *See* W. Va. R. App. P. 40(e). Because one of the children and the terminated father share the same initials, we refer to them as J.F-1 and J.F.-2, respectively.

1

that the father physically and emotionally abused L.H.[2] The petitioner participated in the 2021 proceeding for over one year and received services which included counseling, parenting classes, adult life skills classes and parenting supervision. At the conclusion of the case, the circuit court returned the care, custody and control of the children to the petitioner. However, the court terminated the father's rights to the children and ordered that he have no direct or indirect contact with the children and that "no party [or] parent . . . shall permit any such contact" with the children. The petitioner was present during the dispositional hearing where the court discussed the no-contact order.

On November 30, 2023, the West Virginia Department of Human Services ("DHS")[3] instituted this case with an abuse and neglect petition alleging that the petitioner's "habitual domestic violence and aggression" posed a risk to the children's well-being. According to the petition, the father was living in the petitioner's home, contrary to the circuit court's no-contact order entered in the 2021 case, and the petitioner continued to engage in domestic violence with the father in the presence of the children. The petition

---

[2] L.H.'s father's parental rights were involuntarily terminated in the 2021 case.

[3] The petition below was filed by the West Virginia Department of Health and Human Resources. However, pursuant to West Virginia Code section 5F-2-1a (2023), that Department was terminated and divided into three new and separate agencies: the Department of Health Facilities, the Department of Health, and the DHS. For purposes of this case, the DHS now pursues allegations of abuse or neglect of children.

alleged that the petitioner "failed to protect the children . . . by permitting and condoning contact between the children and the terminated father[.]"

The petitioner appeared for a scheduled preliminary hearing before the circuit court, but she waived her right to the hearing. The court found that there was probable cause to support the allegations in the petition and that, consistent with West Virginia Code section 49-4-602(a)(1) (2024),[4] there existed imminent danger to the children necessitating their removal from the home of the petitioner and the legal and physical custody of the children should remain with the DHS. At the request of the DHS and the guardian ad litem, the court ordered that there be no contact between the petitioner and the children. The court further ordered the DHS to arrange and pay for a psychological evaluation of the petitioner. Although the court also ordered the DHS to "provide for and pay for all necessary services for . . . the [petitioner]" the DHS failed to offer the petitioner any services.

In December 2023, the children were interviewed by the Child Advocacy Center. These interviews described instances of domestic violence between the petitioner and the father, including verbal altercations and multiple occasions of physical violence in

---

[4] West Virginia Code section 49-4-602(a)(1) allows for a child to be placed in the temporary care, custody, and control of the DHS or a responsible person who is not the custodial parent or guardian of the child if there is an imminent danger to the physical well-being of the child and there are no reasonably available alternatives to removal of the child.

the presence of the children after the father's rights were terminated. The DHS amended the petition shortly before adjudication to reference portions of these interviews.

The circuit court held a contested adjudicatory hearing on February 7, 2024. At the adjudicatory hearing, the DHS's witnesses testified that the father was in the home after the no-contact order was entered and that the children saw the petitioner and the father physically fight in the home. The petitioner testified that she was aware of the no-contact order prohibiting the father's contact with the children. When asked whether she nonetheless allowed contact between the father and the children, petitioner testified "not necessarily," explaining that he "pushed his way in" to the home when she would open the door. Although she testified that he did not spend the night there, the father was a drug addict and would show up at her house early in the morning. The petitioner testified that the father did not have a key to the home, but that he "cut deadbolts off my locks and cut padlocks off of my home." She would tell him to leave but she "couldn't stop him [] when he came. I tried." Further, the petitioner testified that she was "afraid of what he would do" if she called law enforcement. The petitioner testified that she filed a domestic violence petition against the father in late November 2023, and denied the allegations in the petition, stating that "I feel like I did everything that I could have" to protect the children from the father who was in her home against her will. The DHS provided the Child Advocacy Center interviews to the court at the adjudicatory hearing; the court indicated that it would consider the interviews and make any additional findings after its review of the interviews.

4

At the conclusion of the testimony in the adjudicatory hearing counsel for the petitioner asked the court to recognize the petitioner as a non-abusing "battered parent" who was a victim of domestic violence just as much as the children. *See* W. Va. Code § 49-1-201 (2025) (defining "battered parent," in part, as one who has "not condoned the abuse or neglect" of the children and who "has not been able to stop the abuse or neglect of the . . . children due to being the victim of domestic violence. . .").[5] The court did not make a finding on the battered parent issue; rather, the court orally concluded that the petitioner was an abusive and neglectful parent.

Following the adjudicatory hearing, on March 6, 2024, the circuit court entered an order in which it determined that the children were abused and neglected children in accordance with West Virginia Code section 49-4-601(i).[6] Further, the court found that the petitioner was an abusive and neglectful parent. The court determined that the petitioner had knowledge that the father's rights were terminated and that he was not permitted to have contact with the children, yet she allowed him in the home and failed to protect the children. Further, the court found that the petitioner and the father "physically

---

[5] We note that when the petitioner was adjudicated, the 2018 version of the statute defining "battered parent," West Virginia Code section 49-1-201, was in effect. The statute was amended in 2025, but no changes were made to the definition of "battered parent."

[6] The petitioner was adjudicated under the version of West Virginia Code section 49-4-601 that took effect in 2019. The Legislature amended the statute in 2025, but no changes were made that affect this appeal.

abused the children and each other"[7] and "committed multiple acts of domestic violence in the presence of the children." The court's adjudicatory order acknowledged the petitioner's assertion that she was a battered parent and a victim of domestic violence, and that the father was in the home against her wishes, but the order contains no findings as to whether the petitioner's testimony, if believed, was sufficient to satisfy the definition of a "battered parent" as set forth in West Virginia Code section 49-1-201. Ultimately, the court ordered the children to continue in their current placement with their legal and physical custody to remain with the DHS. Further, the court denied the petitioner's motion for an improvement period, ordered that there be no contact between the petitioner and the children, and found the petitioner in contempt of the court's prior no-contact order.

Following adjudication, the petitioner submitted to a psychological evaluation. The evaluator noted that the petitioner "accept[ed] little or no responsibility for her own behavior" and tended "to rationalize and transfer blame to others, especially family members[.]" Based upon these and other findings, the psychological evaluator concluded that the petitioner had a poor prognosis for improved parenting.

---

[7] The order contained additional findings suggestive of physical abuse by the petitioner against the children including a finding of "domestic violence between mother and father and *both parents against the children*," and "[petitioner] and [the father] have continued to abuse the children *physically* and emotionally[.]" (Emphasis added). Neither the allegations contained in the amended petition nor the evidence presented at adjudication support a finding of physical abuse by the petitioner.

6

The circuit court conducted an April 2024 dispositional hearing. Both the guardian ad litem and the DHS requested termination of the petitioner's parental rights. In support, the guardian ad litem stressed that the petitioner had blamed her child, L.H., for the prior abuse and neglect proceeding. The guardian ad litem characterized this case as "particularly egregious" because, in the guardian ad litem's view, the petitioner did not have a substance use disorder or mental health diagnosis which might otherwise explain her actions, yet she "placed her dysfunctional relationship" with the father over the mental health and physical safety of her children.

The DHS offered the testimony of the father at the dispositional hearing. He testified that he moved back into the home with the petitioner and the children as soon as the prior abuse and neglect proceeding concluded. He contradicted the petitioner's prior testimony that he forced his way into the home, testifying that the two were in a relationship and that she never asked him to leave. The DHS also presented testimony from a case worker that although the domestic violence conditions persisted in the house, the petitioner told the child, L.H., that she needed to "move on" and "get over the abuse" inflicted by the father. The psychological evaluator also testified at the dispositional hearing that the petitioner was "more frustrated that her children had told what had happened" than she was that the children had been abused. However, the petitioner denied the father's testimony that she allowed him into the home and stated that she did "everything I could in my power to protect [the children] besides call the law to have him come back and probably kill me."

Ultimately, in an order dated May 7, 2024, the circuit court terminated the petitioner's parental rights without granting her an improvement period, finding that she knowingly allowed the father to live in the house after his rights were terminated, in violation of the court's prior no-contact order. The court found that reasonable efforts to reunify the family were not required "due to the horrific circumstances and severe domestic violence in the presence of the children[.]" Additionally, the court determined that there was no reasonable likelihood that the petitioner could correct the conditions of abuse and neglect, that it had considered less drastic alternatives to the termination of her parental rights as required by West Virginia Code section 49-4-604 (2020), and that it was in the best interest of the children to terminate the petitioner's parental and custodial rights to the children.

The petitioner now appeals the circuit court's March 6, 2024, adjudicatory order, and its May 7, 2024, dispositional order.

## II. STANDARD OF REVIEW

For our review of abuse and neglect cases we have held:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

8

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With these standards in mind, we proceed to the parties' arguments.

## III. DISCUSSION

The determinative issue in this case is whether, as the petitioner argues, the circuit court improperly handled her request to be recognized as a "battered parent" and therefore erred in adjudicating her as an abusing and neglectful parent. The DHS argues that the court found that the petitioner was not a credible witness and that, on this record, she could not meet the statutory definition of a "battered parent." The guardian ad litem argues that it was "undisputed" that the petitioner failed to protect the children from the father; as to the petitioner's "battered parent" assertion, the guardian ad litem contends that "the court is not required to rule on that issue" and the petitioner failed to prove that she "did not condone the abuse[.]"

9

The West Virginia Legislature has recognized the existence of a "battered parent" in the context of abuse and neglect adjudication proceeding, providing that

> "[b]attered parent" for the purposes of § 49-4-601 et seq. of this code means a respondent parent, guardian, or other custodian who has been adjudicated by the court to have not condoned the abuse or neglect and has not been able to stop the abuse or neglect of the child or children due to being the victim of domestic violence as defined by § 48-27-202 of this code, which was perpetrated by the same person or persons determined to have abused or neglected the child or children.

W. Va. Code § 49-1-201 (2025). Further, in West Virginia Code section 49-4-601(i), the Legislature directs a circuit court to determine whether a respondent parent meets the statutory definition of a "battered parent," if the question has been raised. In pertinent part, that statute provides that

> [a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting, or, if applicable, a battered parent, all of which shall be incorporated into the order of the court.

*Id.*

That the Legislature has specifically defined the term "battered parent" in this statute suggests its recognition of the impact that domestic violence can have on an individual's parenting ability in the context of an abuse and neglect proceeding. *See* W. Va. Code § 49-1-201. Moreover, the statutory requirement that the circuit court *shall* make a determination of whether a respondent parent is a "battered parent" demonstrates the

10

importance that the Legislature placed on this determination. *See* W. Va. Code § 49-4-601(i) (emphasis added).

The circuit court's determination that a respondent parent is a "battered parent" is significant in that it is a statutory factor which must be considered by a circuit court during disposition. *See id.* § 49-4-604. Specifically, West Virginia Code section 49-4-604 (c)(2) provides that a circuit court can "[r]efer . . . the battered parent . . . to a community agency for needed assistance and dismiss the petition;" subsection (c)(4) provides that a circuit court can "[o]rder terms of supervision calculated to assist the child and any . . . battered parent . . . which prescribe the manner of supervision and care of the child and which are within the ability of any parent or parents or custodian to perform;" and subsection (c)(5) provides that "[u]pon a finding that . . . battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court."

In *In re H.L.*, 243 W. Va. 551, 848 S.E.2d 376 (2020), this Court discussed the "battered parent" definition set forth in West Virginia Code section 49-1-201 and the effect that a "battered parent" determination by a circuit court has in an abuse and neglect proceeding. In this regard, while the petitioner in *In re H.L.* asked the circuit court to

11

dismiss the abuse and neglect allegations against her because she was a "battered parent," we determined that

> a finding that an adult respondent in an abuse and neglect petition is a "battered parent" does not result in an automatic dismissal of the abuse and neglect petition. Rather, an adjudication as a "battered parent" is a factor to be considered during the disposition phase. *See* W. Va. Code § 49-4-604 (2019).

243 W. Va. at 557, 848 S.E.2d at 382. We concluded in *In re H.L.* that the court's failure to consider the petitioner's battered parent argument at adjudication frustrated the Rules of Procedure for Child Abuse and Neglect Proceedings[8] and West Virginia Code section 49-4-601(i) and, therefore, a new adjudicatory hearing was warranted. 243 W. Va. at 556, 848 S.E.2d at 381.

Consistent with our holding in *In re H.L.*, and the relevant statutes discussed *supra*, we now hold that when a respondent parent asserts that he or she is a "battered parent" as that term is defined in West Virginia Code section 49-1-201 (2025) prior to the conclusion of an adjudicatory hearing, the circuit court must allow for the presentation of evidence on that issue during the adjudicatory hearing. At the conclusion of the adjudicatory hearing, West Virginia Code section 49-4-601(i) (2025) requires the circuit

---

[8] Rule 27 provides that "[a]t the conclusion of the adjudicatory hearing, the [circuit] court shall make findings of fact and conclusions of law, in writing or on the record, as to whether the child is abused and/or neglected in accordance with W. Va. Code § 49-4-601(i)."

court to make findings of fact and conclusions of law as to whether the respondent parent meets the statutory definition of a "battered parent." At a minimum, the circuit court must assess whether the respondent parent condoned the abuse or neglect; whether the respondent parent was unable to stop the abuse or neglect of the child(ren) due to being a victim of domestic violence; and whether the domestic violence was perpetrated by the same person who abused or neglected the child(ren).[9] Further, if the circuit court determines that a respondent parent is a "battered parent" at adjudication, then the court must consider that determination during the dispositional phase in accordance with West Virginia Code section 49-4-604 (c) (2020). *See In re H.L.*, 243 W. Va. at 557, 848 S.E.2d at 382.

We have previously held that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

---

[9] *See, e.g., In re M.R.*, 2024 WL 2281125, at *3 (W. Va. 2024) (memorandum decision) (finding petitioner was not a "battered parent" because "the record demonstrates that it was the petitioner who in fact perpetrated the abuse and/or neglect in the absence of any ongoing domestic violence."); *In re C.W.*, 2018 WL 1040378, at *4 (W. Va. 2018) (memorandum decision) (concluding that the "battered parent" definition does not apply where petitioner herself "engaged in domestic violence against the father.").

13

Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001).

Here, at the adjudicatory hearing, the petitioner asserted that her circumstances met the definition of battered parent. The circuit court acknowledged that the petitioner had raised the battered parent issue, but it summarily dismissed this argument and proceeded to its adjudicatory findings. Importantly, the court failed to make any findings of fact or conclusions of law as to whether the petitioner met the statutory definition of a battered parent, as the court was required to do under West Virginia Code section 49-4-601(i). Although the court made factual findings regarding domestic violence in the adjudicatory order, it did not make any findings as to how, if at all, those factual findings related to the question of whether the petitioner was a "battered parent." *See* W. Va. Code § 49-1-201. Thus, we must vacate the adjudicatory order and remand the case to the circuit court for a new adjudicatory hearing and order on the battered parent question and any matters ancillary to that issue.

The petitioner also argues that the circuit court erred in terminating her parental rights to the children at disposition. *See* W. Va. Code § 49-4-604(c)(6). As this Court has repeatedly stated, proper adjudication is a prerequisite to disposition:

> In a child abuse and neglect hearing, before a court can begin to make any of the dispositional alternatives under W. Va. Code [§ 49-4-604], it must hold a hearing under W. Va. Code [§ 49-4-601], and determine "whether such child is

14

abused or neglected." Such a finding is a prerequisite to further continuation of the case.

Syl. Pt. 1, *State v. T.C.*, 172 W. Va. 47, 303 S.E.2d 685 (1983); s*ee also In re Z.S.-1*, 249 W. Va. 14, 21, 893 S.E.2d 621, 628 (2023) ("Without properly made findings of abuse and/or neglect at adjudication, a case cannot proceed to disposition."). Because we have concluded that the circuit court erred when it failed to consider the petitioner's "battered parent" argument at adjudication, both the court's adjudicatory order and its dispositional order must therefore be vacated.

In view of our resolution of this matter, we need not address the remainder of the petitioner's assignments of error.

## IV. CONCLUSION

For the reasons stated above, we vacate the March 6, 2024, adjudicatory order and the May 7, 2024, dispositional order and remand this case to the circuit court for further proceedings consistent with this opinion.

Vacated and Remanded with Directions.

15